1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRADY ARMSTRONG,                          No.  2:12-cv-0123 TLN KJN P

12                  Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   D. YOUNG, et al.,

15                  Defendants.

16

17          Plaintiff is a former state prisoner proceeding pro se and in forma pauperis.  Plaintiff was

18   ordered to show cause why plaintiff's claims against the remaining defendants, Turner, Young,

19   and John Doe should not be dismissed.[1]  After receiving an extension of time, plaintiff filed a

20   response to the order to show cause.  As set forth below, the court finds that plaintiff's claims

21   against defendants Turner and Young should be dismissed as barred by res judicata, and

22   plaintiff's claim against defendant John Doe should be dismissed.

23   I.  Background

24          This civil rights action, filed pursuant to 42 U.S.C. § 1983, is proceeding on the original

25   complaint filed January 17, 2012, as to defendants Chandler, Turner, Young, and "John Doe."  By

26   order filed May 1, 2012, the court found that plaintiff stated potentially cognizable retaliation

27   _____

28   [1] Plaintiff's claims against defendant Brewer were dismissed on September 25, 2012, and claims
     against defendant Chandler were dismissed on July 29, 2013.  (ECF Nos. 24 & 50.)

                                             1

1  claims against defendants Young, Chandler, and Turner, an Eighth Amendment claim against

2  defendant Young, and a potentially cognizable failure to protect claim against defendant "John

3  Doe." (ECF No. 13 at 3-4.)

4      By separate findings and recommendations (ECF No. 46), the court found that defendant

5  Chandler's motion to dismiss plaintiff's claims on the grounds of res judicata should be granted,

6  which were adopted by the district court on July 29, 2013. (ECF No. 50.) While reviewing

7  plaintiff's filings in Armstrong v. Garcia, 2:08-cv-0039 FCD KJM P (E.D. Cal.), in connection

8  with defendant Chandler's motion to dismiss, the court was put on notice that plaintiff's claims

9  against defendants Turner and Young were previously decided on the merits.

10     Moreover, in his response to the order to show cause, plaintiff brought to the court's

11  attention two other cases in which plaintiff raised identical claims against defendants Turner and

12  Young: Armstrong v. Young, 2:04-cv-2136 GEB PAN, and Armstrong v. Garcia, 2:11-cv-0965

13  GEB KJN. (ECF No. 63 at 3.)

14     In the instant case, service of process on defendants Turner and Young was returned

15  unexecuted, and plaintiff sought court intervention to locate these defendants. Plaintiff's

16  allegations against defendant Turner arose in January of 2005, and his allegations against

17  defendant Young arose in October of 2004. Given the stale nature of plaintiff's remaining

18  allegations, as well as a need to locate these defendants for service of process, it would serve

19  purposes of judicial economy, as well as to avoid unnecessary judicial waste, for the court to sua

20  sponte address the issue of res judicata in connection with unserved defendants Turner and

21  Young.

22     In addition, while reviewing plaintiff's prior cases, the court was put on notice that

23  plaintiff did not exhaust his claim against "John Doe," which also arose in October of 2004. In

24  addition, plaintiff failed to raise his 2004 claim against John Doe in any of his prior complaints

25  challenging the events of October 2004 at issue here. Thus, it appears plaintiff first raised his

26  claim against John Doe in the instant complaint filed on January 17, 2012. John Doe has not been

27  identified or served with process. Accordingly, due to the stale nature of plaintiff's claim against

28  John Doe, the delay in plaintiff's attempt to raise such claim, and the need to identify and locate

2

1  defendant John Doe, it appears appropriate to sua sponte address plaintiff's claim against John

2  Doe, in the interest of judicial economy and to avoid unnecessary judicial waste.

3  II. <u>Res Judicata</u>

4      A. <u>Res Judicata Standards</u>

5      The doctrine of res judicata, also known as claim preclusion, protects "litigants from the

6  burden of relitigating an identical issue" and promotes "judicial economy by preventing needless

7  litigation." <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979).  The court bars a claim

8  where there is an identity of claims, a final judgment on the merits, and privity between parties.

9  <u>See</u> <u>Mpoyo v. Litton Electro-Optical Sys.</u>, 430 F.3d 985, 987 (9th Cir. 2005).  An identity of

10  claims exists if the two actions arise out of the same transactional nucleus of facts.  <u>Burlington N.</u>

11  <u>Santa Fe R. R. v. Assiniboine & Sioux Tribes</u>, 323 F.3d 767, 770 (9th Cir. 2003).  Res judicata

12  "bar[s] all grounds for recovery which could have been asserted, whether they were or not, in a

13  prior suit between the same parties . . . on the same cause of action."  <u>Constantini v. Trans World</u>

14  <u>Airlines</u>, 681 F.2d 1199, 1201 (9th Cir. 1982) (quoting <u>Ross v. IBEW</u>, 634 F.2d 453, 457 (9th

15  Cir. 1980)).  "Res judicata, or claim preclusion, 'bars any lawsuits on any claims that were raised

16  or could have been raised in a prior action.'"  <u>FTC v. Garvey</u>, 383 F.3d 891, 897 (9th Cir. 2004)

17  (citation omitted)).

18      Res judicata is generally jurisdictional; therefore, dismissal is proper under Federal Rule

19  of Civil Procedure 12(b)(1).  <u>See</u> <u>Lande v. Billings Hospitality, Inc.</u>, 2008 WL 4180002, *1 (D.

20  Mont. 2008).  Moreover, courts may sua sponte dismiss an action on res judicata grounds to avoid

21  "unnecessary judicial waste."  <u>Arizona v. California</u>, 530 U.S. 392, 412 (2000).  "As a general

22  matter, a court may, sua sponte, dismiss a case on preclusion grounds 'where the records of that

23  court show that a previous action covering the same subject matter and parties had been

24  dismissed.'"  <u>Headwaters Inc. v. U.S. Forest Service</u>, 399 F.3d 1047 (9th Cir. 2005) (citation

25  omitted).  Because the court itself has an interest in preventing repetitive litigation, courts may

26  raise, sua sponte, arguments of res judicata and issue preclusion.  <u>Clements v. Airport Auth. of</u>

27  <u>Washoe County</u>, 69 F.3d 321, 329-30 (9th Cir. 1995) (recognizing ability to raise sua sponte

28  arguments of res judicata and issue preclusion because they protect public interests).  District

1   courts may, sua sponte, consider res judicata so long as the parties are provided an opportunity to

2   address the question before ruling.  McClain v. Apodaca, 793 F.2d 1031, 1032-33 (9th Cir. 1986).

3           B.  Plaintiff's Prior Actions

4           This action is proceeding on the original complaint filed January 17, 2012, as to

5   defendants Turner, Young, and John Doe.  As set forth above, plaintiff has filed three other

6   actions in which he raised identical allegations to those alleged against defendants Turner and

7   Young in the instant action.  Below, the undersigned sets forth plaintiff's claims as to these

8   defendants.[2]

9                   i.  The Instant Complaint

10          In the January 17, 2012 complaint, plaintiff alleges that on January 18, 2005, defendant

11  Turner intentionally spat on plaintiff's head/face, causing plaintiff to run his wheelchair into the

12  wall/door jamb, in retaliation for plaintiff submitting inmate appeals against defendant Turner and

13  his co-workers.  (ECF No. 1 at 13.)  Plaintiff alleges that this claim was exhausted through

14  administrative appeal HDSP-C05-00155.  (ECF No. 1 at 14.)

15          Plaintiff also alleges that on October 14, 2004, while being escorted by defendants Young

16  and John Doe, defendant Young told plaintiff he was going to take the shortcut, and intentionally

17  pushed plaintiff's wheelchair from the paved road onto the muddy ground obstructed with rocks,

18  wet dirt and grass, "flipping/throwing plaintiff out of his wheelchair.  (ECF No. 1 at 9.)  Plaintiff

19  states that defendant Young was whispering and laughing with someone during the escort.  (ECF

20  No. 1 at 9.)  Plaintiff contends defendant John Doe failed to protect plaintiff by failing to stop

21  defendant Young from pushing the wheelchair off the pavement.  (ECF No. 1 at 9.)  Plaintiff

22  argues that defendant Young intentionally pushed plaintiff out of his wheelchair in retaliation for

23  plaintiff using the inmate appeals process.  (ECF No. 1 at 10.)

24  ////

25  ////

26  _____

27  [2]  A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285
    F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both
    within and without the federal judicial system, if those proceedings have a direct relation to
28  matters at issue") (internal quotation omitted).

4

ii. <u>Case No. 2:04-cv-2136 GEB EFB</u>

In the operative amended complaint, plaintiff named defendants Young and Turner as defendants, and raised allegations that defendants dumped him out of his wheelchair while it was in motion, and spat on plaintiff. (ECF No. 28 at 5-7.) On January 19, 2006, defendants Young and Turner filed a motion to dismiss based on plaintiff's alleged failure to exhaust available administrative remedies prior to bringing the complaint in federal court. (ECF No. 74.) On August 21, 2006, the court described plaintiff's pertinent claims as follows: "(5) on October 13, 2004, defendant Young intentionally dumped plaintiff from his wheelchair; (6) on January 18, 2005, Turner spit on plaintiff." (ECF No. 126 at 1-2.) The court set forth plaintiff's relevant administrative appeals:

> Appeal Number 04-2606
>
> On October 14, 2004, plaintiff filed a grievance asserting defendant Young "dumped" plaintiff from his wheelchair and that plaintiff suffered injuries to his knees, shoulders, neck, back and side and that he was not examined at the clinic. Plaintiff pursued the appeal to the Director's Level of Review and on January 12, 2005, relief was denied. Plaintiff's Opposition, Attachment D.

(ECF No. 126 at 3-4.)[3] The court found that plaintiff exhausted his claim as to defendant Young on January 12, 2005, three months after plaintiff filed Case No. 2:04-cv-2136 GEB EFB, and recommended that claim 5 be dismissed without prejudice. (ECF No. 126 at 6.)

> Appeal Number 05-155
>
> On January 18, 2005, plaintiff filed an appeal asserting defendant Turner spit on plaintiff. Plaintiff pursued the appeal to the Director's Level of Review where he was denied relief on July 5, 2005. Plaintiff's Opposition, Attachment F.

////

---

[3]  In Case No. 2:04-cv-2136 GEB EFB, plaintiff provided copies of administrative appeals and decisions in HDSP 04-2606 with his opposition to the motion to dismiss for failure to exhaust administrative remedies. (ECF Nos. 112 at 49-56; 116 at 51-60.)   In administrative appeal HDSP 04-2606, plaintiff made no mention of another prison employee accompanying defendant Young on the October 13, 2004 escort, and raised no allegation that a prison employee failed to protect plaintiff from defendant Young's acts. (ECF Nos. 112 at 49-56; 116 at 51-60.)

5

1    (ECF No. 126 at 5.)  Also, the court found that plaintiff failed to complete exhaustion of claim 6

2    as to defendant Turner until July 5, 2005, nearly nine months after he filed Case No. 2:04-cv-

3    2136 GEB EFB, and recommended dismissing claim 6 without prejudice.  (ECF No. 126 at 5.)

4         On September 27, 2006, plaintiff's claims against defendants Young and Turner were

5    dismissed without prejudice.  (ECF No. 134.)

6                        iii.  Case No. 2:08-cv-0039 FCD KJM

7         In the operative amended complaint, plaintiff alleged that on January 18, 2005, defendant

8    Turner intentionally spat upon plaintiff, causing plaintiff to run his wheelchair into the door jamb,

9    in retaliation for plaintiff using the inmate appeals to report actions of state employees'

10   misconduct.  (ECF No. 34 at 19.)

11        Plaintiff alleged that he submitted an inmate appeal stating that defendant Young

12   intentionally "stopped pushing the plaintiff in his wheelchair on the . . . hard pavement and

13   erratically began pushing the plaintiff via wheelchair on the dirt/mud/yard running into a

14   hold/rock causing the plaintiff and his wheelchair to flip/dump over and causing injury to the

15   plaintiff's finger, neck, back, shoulders, legs. . . ."  (ECF No. 34 at 17.)  Plaintiff claimed that all

16   of his administrative remedies were exhausted on January 12, 2005, in Log No. HDSP-04-2606,

17   when his appeal was granted in part.  (ECF No. 34 at 18.)  In appeal HDSP-04-2606, plaintiff

18   claimed defendant Young dumped plaintiff out of the wheelchair on October 13, 2004.  (ECF No.

19   34 at 120.)  Plaintiff also claimed that his hands were chained to the sides of his body.  (ECF No.

20   34 at 112.)[4]

21        Finally, on June 26, 2008, and May 21, 2009, the court ordered service of these Eighth

22   Amendment claims against defendants Turner and Young.  (ECF Nos. 10, 39.)  On June 15, 2010,

23   the district court dismissed the claims made against defendants Turner and Young regarding the

24   claims set forth above pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (ECF No.

25   103.)

26   _____

     [4]  In the operative amended complaint, plaintiff made no mention of another prison employee

27   accompanying defendant Young on the October 13, 2004 escort, and raised no allegation that a
     prison employee failed to protect plaintiff from defendant Young's acts.  (ECF No. 34 at 17-18.)

28

iv.  Case No. 2:11-cv-0965 GEB KJN

In plaintiff's amended complaint, plaintiff raised allegations unrelated to his claims of inadequate medical care at High Desert State Prison.  (ECF No. 22 at 3.)  Specifically, plaintiff alleged that defendant Young threw plaintiff out of his wheelchair,[5] and that defendant Turner spit in plaintiff's face, causing him to run his wheelchair into a wall.  (ECF No. 22 at 3.)  On November 9, 2011, the court recommended that these unrelated claims be dismissed.  (ECF No. 23.)  On March 12, 2012, plaintiff's unrelated claims as to defendants Turner and Young were dismissed.  (ECF No. 38.)

C.  Analysis:  Defendants Turner and Young

Comparison of plaintiff's prior actions demonstrates that plaintiff's claims in the instant complaint regarding the actions of defendants Turner and Young are identical to those made against defendants Turner and Young in plaintiff's prior cases.  Although plaintiff cites the date October 14, 2004, in his complaint, in his response to the order to show cause, plaintiff uses the date October 13, 2004 (ECF No. 63 at 2), and the surrounding details as to how defendant Young intentionally "dumped" plaintiff from his wheelchair while escorting plaintiff to the library, as well as the alleged injuries sustained therefrom, confirm that plaintiff challenges defendant Young's actions on October 13, 2004.

On June 15, 2010, the district court dismissed plaintiff's claims made against defendants Turner and Young, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (Case No. 2:08-cv-0039 FCD KJM ("08-cv-0039"), ECF No. 103.)  Federal Rule of Civil Procedure 41(b) provides that

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise under this subdivision (b) and any dismissal not under this rule -- except

---

[5]  Plaintiff initially states:  "That while plaintiff was being 'escorted' from the HDSP - 'C' Facility Law Library, defendant D. Young, et. al, was whispering to one another and laughing, [sic] and defendant D. Young decided to push plaintiff and his wheelchair. . . ." (ECF No. 21 at 22.)  Plaintiff does not identify the other person to whom Young was whispering, and plaintiff does not allege that any other officer failed to protect plaintiff from Young.  (ECF No. 21 at 22-23.)

one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).  "[A]n adjudication on the merits" means, under the rule, a dismissal with prejudice.  Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001); see also Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002).  A dismissal with prejudice bars re-filing of the same claim in the same court.  Semtek, 531 U.S. at 506.

Thus, plaintiff's claims against defendants Turner and Young are barred by the doctrine of res judicata because the claims involve the same parties and were previously adjudicated on the merits in 08-cv-0039.

In his response to the order to show cause, plaintiff now appears to contend that defendant Young was deliberately indifferent to plaintiff's serious medical needs by chaining plaintiff to the wheelchair and intentionally forcing him out of the wheelchair.  However, plaintiff may not now raise new claims stemming from the October 13, 2004 incident against defendant Young.  As set forth above, res judicata "bar [s] all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action."  Constantini, 681 F.2d at 1201.  Here, the parties are the same, the underlying incident is the same, and plaintiff is attempting to raise new claims that could have and should have been asserted in 08-cv-0039.  Thus, plaintiff may not now raise a deliberate indifference claim against defendant Young.

Accordingly, defendants Turner and Young should be dismissed based on the doctrine of res judicata.[6]

---

[6]  It appears that plaintiff's claims against defendants Turner and Young are also barred by the statute of limitations.  Although the statute of limitations is an affirmative defense that normally may not be raised by the court sua sponte, it may be grounds for sua sponte dismissal of an in forma pauperis complaint where the defense is complete and obvious from the face of the pleadings or the court's own records.  See Franklin v. Murphy, 745 F.2d 1221, 1228-30 (9th Cir. 1984).  Generally, prisoners have four years from the time the claim accrues to file their action. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007) (applicable statute of limitations is California's statute of limitations for personal injury actions; California Civil Procedure Code § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for persons imprisoned on a criminal charge).)  In addition, the limitations period is tolled while the prisoner completes the mandatory exhaustion process.  Brown v. Valoff, 422 F.3d 926. 942-43 (9th Cir. 2004).  Here, plaintiff exhausted his administrative remedies as to defendant Young on January

D. <u>Ongoing Course of Conduct Theory:  Defendant Young</u>

It appears that plaintiff contends that the court should not bar his claims as to defendant Young because plaintiff only recently learned of the "severe extent and or 'ongoing' injury" plaintiff sustained at the hands of defendant Young when, on April 4, 2013, plaintiff was required to have "severe painful surgery."  (ECF No. 63 at 2.)  Plaintiff contends that when a medical doctor at SATF State Prison examined plaintiff, the doctor determined that surgery was required to remove the severe painful growth and permanent injuries (e.g., scar and severe pain joint of finger 1/2 inch long 1/2 inch wide approximate size) as [a] result of [the] wheelchair accident/ crash."  (ECF No. 63 at 4.)  Plaintiff contends that the factual basis is different because he did not receive notice until April 4, 2013, that plaintiff suffered permanent injuries to his left hand finger caused by defendant Young intentionally dumping plaintiff out of his wheelchair at HDSP on October 13, 2004.  (ECF No. 63 at 6.)

In addition, plaintiff provided copies of medical records.  (ECF No. 63 at 15-35.)  On February 12, 2013, plaintiff completed a health care services request form in which he complained of a "severe painful broken/damaged finger" that was previously x-rayed, but for which plaintiff had received no treatment.  (ECF No. 63 at 25.)  Plaintiff sought to be seen by a doctor and specialist concerning his "severely painful finger."  (<u>Id.</u>)  On February 13, 2013, plaintiff was seen by Elsa Cagney, R.N.; plaintiff reported having a "painful, broken . . . finger, and the date of onset as "2 months ago."  (ECF No. 63 at 20.)  The medical "Encounter Form," under additional comments, notes "history of injury," and that the December 12 x-ray showed "superficial swelling, possible [Ganglion] cyst."  (ECF No. 63 at 21.)

On April 4, 2013, Dr. F. Chang recommended the following procedure:  "aspiration of nodule [left] [middle] finger -- excision of nodule [left] index finger."  (ECF No. 63 at 16.)  The radiology report compared a prior study performed on December 26, 2012, with the study on

////

12, 2005, and as to defendant Turner on July 5, 2005.  Thus, plaintiff should have brought his claims against defendants Turner and Young no later than 2009.  The instant complaint was filed in January of 2012, almost three years later.  Thus, plaintiff's claims against defendants Turner and Young are also barred by the statute of limitations.

1   April 4, 2013, and found:

2   > There is no interval change.  Again noted are unremarkable bony
3   > structures.  There is soft tissue mass located on the ulnar side
    > overlying the PIP joint unchanged from prior study.  This is better
    > seen on prior study as those films showed better soft tissue contrast.
4   > The mass is slightly higher attenuation than the surrounding soft
    > tissue.  No evidence of calcification is identified.
5
6   > IMPRESSION:  Stable soft tissue mass without bony involvement.

7   (ECF No. 63 at 18.)

8         However, plaintiff raises no claims as to defendant Young's conduct following his

9   involvement in the wheelchair incident at HDSP.  Plaintiff does not allege that defendant Young

10  was responsible for plaintiff's medical care, or allege that defendant Young was employed as a

11  medical professional at HDSP.  Thus, plaintiff's new medical claims involve different facts not

12  alleged against defendant Young.  Moreover, even if plaintiff could allege facts demonstrating

13  defendant Young was deliberately indifferent to plaintiff's medical care following the October 13,

14  2004 incident, such claims were cut off when, in 08-cv-0039, plaintiff's claims against defendant

15  Young were dismissed with prejudice.  If plaintiff were suffering ongoing issues in connection

16  with injuries sustained from the October 13, 2004 incident, he should have raised them in 08-cv-

17  0039, but failed to do so.  The documents provided by plaintiff reflect that plaintiff did not learn

18  of the permanent injury to his finger until April 3, 2013.  By that date, any claim against

19  defendant Young was barred by the dismissal of plaintiff's claims in 08-cv-0039.

20        To the extent that plaintiff is not happy with a delay in treatment for the nodule on his

21  finger, or contends that individuals were deliberately indifferent to his serious medical needs in

22  2012 or 2013, he may file a new section 1983 action provided he has first exhausted his

23  administrative remedies.  But the allegations contained in plaintiff's response to the order to show

24  cause are insufficient to demonstrate that defendant Young was involved with plaintiff's medical

25  treatment or care following the October 13, 2004 injury at HDSP.

26  III.  Exhaustion of Administrative Remedies

27        A.  Legal Standard re Exhaustion

28        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

10

1    provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

2    § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

3    facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

4    Exhaustion in prisoner cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516,

5    524 (2002).

6         Compliance with the exhaustion requirement is mandatory for any type of relief sought.

7    Booth v. Churner, 532 U.S. 731, 739, 741 (2001) (holding that prisoners must exhaust their

8    administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money

9    damages, even though the latter is unavailable pursuant to the administrative grievance process);

10   accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is

11   mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also

12   Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a

13   Congressional judgment that the federal courts may not consider a prisoner's civil rights claim

14   when a remedy was not sought first in an available administrative grievance procedure.").

15        As noted above, the PLRA requires proper exhaustion of administrative remedies.

16   Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  "Proper exhaustion demands compliance with an

17   agency's deadlines and other critical procedural rules because no adjudicative system can

18   function effectively without imposing some orderly structure on the course of its proceedings."

19   Id. at 90-91.  Thus, compliance with grievance procedures is required by the PLRA to properly

20   exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

21   otherwise procedurally defective administrative grievance or appeal."  Id. at 83-84.  When the

22   rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's

23   complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought."

24   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  This requirement is so because the

25   primary purpose of a prison's administrative review system is to "notify the prison of a problem

26   and to facilitate its resolution."  Griffin, 557 F.3d at 1120.

27        Non-exhaustion under § 1997e(a) is an affirmative defense.  Bock, 549 U.S. at 204, 216.

28   However, where it is clear that a plaintiff has not first exhausted his administrative remedies,

courts may dismiss such claims sua sponte.  See id. at 199, 214-16 (exhaustion is an affirmative

defense and sua sponte dismissal for failure to exhaust administrative remedies under the PLRA

is only appropriate if, taking the prisoner's factual allegations as true, the complaint establishes

the failure to exhaust); see also Salas v. Tillman, 162 Fed. Appx. 918 (11th Cir. 2006), cert.

denied, 549 U.S. 835 (2006) (district court's sua sponte dismissal of state prisoner's civil rights

claims for failure to exhaust was not abuse of discretion; prisoner did not dispute that he timely

failed to pursue his administrative remedies, and a continuance would not permit exhaustion

because any grievance would now be untimely).

A.  Analysis:  Defendant John Doe

In the instant complaint, plaintiff alleges that John Doe failed to protect plaintiff when he

failed to stop defendant Young from pushing plaintiff's wheelchair off the pavement and into "the

muddy dirt grassy area."  (ECF No. 1 at 8.)  Plaintiff appended numerous exhibits to his original

complaint filed in 08-cv-0039.  (Id., ECF No. 1.)  Importantly, in the administrative appeals for

HDSP-04-2606, in which plaintiff challenged defendant Young's actions on October 13, 2004,

plaintiff did not mention another prison employee accompanying defendant Young.  (Id., ECF

No. 1 at 112-21.)[7]  Plaintiff's administrative appeal solely complained of defendant Young's

actions, and argued that Young acted in retaliation.  There was no claim that another prison

employee failed to protect plaintiff during the October 13, 2004 escort.  (Id., ECF No. 1 at 112-

21.)[8]

Plaintiff is not required to specifically name prison employees in the administrative appeal

process.  Jones, 549 U.S. at 219.  However, plaintiff must include sufficient facts to put prison

---

[7]  Exhibits appended to a complaint are a part thereof for all purposes.  See Fed. R. Civ. P. 10(c).
Although plaintiff did not re-append his exhibits to the operative amended complaint, the exhibits
submitted by plaintiff remain a part of the court record.

[8]  Moreover, plaintiff's failure to exhaust his administrative remedies as to his claim concerning
John Doe on October 13, 2004, is confirmed in defendant Chandler's motion to dismiss.  (ECF
No. 29-2.)  Defendants provided copies of the only two Director's Level Appeal Decisions
received by plaintiff in 2004 and 2005:  HDSP 04-1187, raising a medical claim concerning
Medical Technical Assistant Barton on December 14, 2004, and HDSP 05-0155, alleging that on
January 14, 2005, defendant Turner spat on plaintiff, issued on July 5, 2005.  (ECT No. 29-2 at
14, 16.)  Neither appeal included claims from the October 13, 2004 escort.

1     officials on notice of plaintiff's claims. <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009)

2     ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its

3     resolution, not to lay groundwork for litigation.")

4          Here, a fair reading of plaintiff's administrative appeals reflects that plaintiff complained

5     that during an October 13, 2004 escort, defendant Young intentionally dumped plaintiff out of his

6     wheelchair, while his arms were chained to his body, and that plaintiff sustained injuries, for

7     which he was allegedly not examined, and that defendant Young acted in retaliation. (08-cv-

8     0039, ECF No. 1 at 112, 115, 116, 118, 120.) Thus, plaintiff's failure to note the presence of

9     another prison employee during the October 13, 2004 escort or to include his claim that this

10     employee failed to protect plaintiff from being thrown from the wheelchair was insufficient to put

11     prison officials on notice that plaintiff alleged a claim separate from his claim that defendant

12     Young intentionally threw plaintiff out of the wheelchair. Thus, plaintiff failed to exhaust his

13     administrative remedies as to defendant John Doe before filing the instant complaint.

14          Moreover, in his response to the order to show cause, plaintiff failed to address the issue

15     of exhaustion of administrative remedies. (ECF No. 63, *passim*.) Plaintiff only mentions

16     defendant John Doe once, in connection with plaintiff's efforts to demonstrate a continuing

17     course of conduct claim against defendant Young. (ECF No. 63 at 10.) Plaintiff's reference

18     appears to exclude John Doe from this claim: "With the exception of Defendant John Doe, the

19     [blank] contends res judicata barred these claims against defendant "due" to Plaintiff['s] ongoing

20     suffering. . . ." (ECF No. 63 at 10.) Plaintiff does not deny that he failed to exhaust his claim as

21     to defendant John Doe.

22          For all of these reasons, plaintiff's claims against defendant John Doe should be dismissed

23     without prejudice based on plaintiff's failure to first exhaust administrative remedies.

24          Alternatively, plaintiff's claims against defendant John Doe are barred by the statute of

25     limitations. Prisoners generally have four years from the time the claim accrues to file their

26     action. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 387-88 (2007) (applicable statute of limitations is

27     California's statute of limitations for personal injury actions; California Civil Procedure Code

28     § 335.1 (establishing a two-year statute of limitations in § 1983 cases); and California Civil

1   Procedure Code § 352.1(a) (providing a tolling of the statute of limitations for two years for

2   persons imprisoned on a criminal charge).)  The limitations period is also tolled while the

3   prisoner completes the mandatory exhaustion process.  Brown v. Valoff, 422 F.3d 926. 942-43

4   (9th Cir. 2004).

5          Here, plaintiff's claims against defendant John Doe accrued on October 13, 2004.  Under

6   the mailbox rule, plaintiff first filed his allegations against defendant John Doe in the instant

7   action on January 9, 2012.  (ECF No. 1 at 19).  "[T[he Houston mailbox rule applies to § 1983

8   complaints filed by pro se prisoners."  Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009),

9   citing Houston v. Lack, 487 U.S. 266, 275-76 (1988).  Even if the court liberally granted plaintiff

10  one year for tolling during the administrative exhaustion process, which plaintiff did not pursue,

11  plaintiff's claims against John Doe are barred by the statute of limitations because plaintiff first

12  brought them over seven years after the claims first accrued.  Thus, plaintiff's claims should be

13  dismissed as barred by the statute of limitations.

14  IV.  New Unrelated Claims

15         Finally, in his response to the order to show cause, plaintiff raises vague allegations

16  concerning the alleged denial, by unidentified individuals, of his request for medical care by an

17  outside doctor, for inadequate medical care, and for delay of medical care.  First, such vague and

18  conclusory allegations fail to state a cognizable civil rights claim.  Second, it is unclear whether

19  plaintiff pursued administrative remedies as to each claim, and whether he has exhausted such

20  claims.  Third, plaintiff alleged no medical claims in his original complaint.  Rather, as set forth

21  in the court's screening order, plaintiff initially stated a potentially cognizable retaliation claim

22  against defendants Young, Chandler and Turner, an Eighth Amendment claim against defendant

23  Young, and a potentially cognizable failure to protect claim against defendant John Doe.  (ECF

24  No. 13 at 3.)  None of these named defendants are medical professionals, and there are no

25  allegations that any of the defendants were responsible for providing plaintiff with medical care.

26  Fourth, to the extent plaintiff may seek to litigate claims concerning medical care provided on

27  October 13, 2004, or shortly thereafter, such claims are barred by the statute of limitations, as set

28  ////

1  forth above.[9]  For all of these reasons, the court declines to grant plaintiff leave to amend given

2  the stale nature of the claims pled.

3         Accordingly, IT IS HEREBY RECOMMENDED that:

4         1.  Plaintiff claims against defendants Turner and Young be dismissed with prejudice on

5  res judicata grounds;

6         2.  Plaintiff's claims against John Doe be dismissed without prejudice; and

7         3.  The Clerk of Court be directed to terminate this action.

8         These findings and recommendations are submitted to the United States District Judge

9  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10  after being served with these findings and recommendations, plaintiff may file written objections

11  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

12  and Recommendations."  Plaintiff is advised that failure to file objections within the specified

13  time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

14  (9th Cir. 1991).

15  Dated:  May 9, 2014

16

17  /arms0123.56

                               KENDALL J. NEWMAN
                               UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26  [9]  This recommendation does not preclude plaintiff from pursuing, in a new civil rights action, claims for deliberate indifference to his serious medical needs against individuals responsible for his medical care in 2012 and 2013.  Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404,

27  407 (9th Cir. 1985) ("Shapley alleges that he did not learn of the consequences of the delay in surgery until after the first action had been litigated.  He therefore could not have been expected

28  to include a claim of medical indifference based on the delay in surgery in his first action.")